The next case will be 081124, after med, LLC, the Stryker Corporation. Thank you, Your Honor. May it please the Court, There are three exceptional reasons which mandate reversal of the injunction in this case. First, the District Court here gives no weight to Acmed's prior forfeiture of exclusive rights. No weight? Well, I thought the Court noted the nature of the two licenses that were granted and discounted them. One was settled in litigation and one was put on the table. Why is that no weight? Okay, discounted them. No weight. It's really the same thing. There's no value given by the Court to those licenses. And the error... The Court didn't regard them as conclusive. That may be, Your Honor. But the fact of the matter is there were two licenses given to companies the same size as Stryker. Okay? Unrestricted licenses. But one was in settlement litigation. That's right. And you're really looking at a situation where the only way we could reverse it is for you to show us whether the District Court views its discretion in issuing a permanent injunction. That's correct, Your Honor. And that's what I'm trying to do, Your Honor. The way abuse of discretion is found is that there's a clear error in the judgment weighing the factors, of course, or there's an error of law in clearly erroneous factual... In other words, abuse of discretion covers an offense to the sentence, fact, law, et cetera. That's right. But doesn't the patentee have a right to choose its licensees? And even if, for one reason or another, it licenses one or two because of special circumstances, does that mean that it has to license others? I don't think it necessarily means it has to license others. But the issue is, had they given up their exclusive rights, which shows that they no longer believe they'd be irreparably harmed by a competitor out there... By another competitor. By another competitor. And then monetary damages may be sufficient. Here, they licensed two companies. Yes, one was out of settlement. One wasn't. But it was two companies of the same size as Stryker. Unrestricted licenses, and they're direct competitors. One of the errors, I believe, the district court made was it discounted the Zimmer license because the court, I believe, said they weren't a competitor. They are a competitor of Acumen. Okay, so that's why that's important. And that's why you can distinguish all the district court cases that Acumen sided to. That the patent owner gave up exclusive rights by licensing. So that's evidence. And I believe the district court did not weigh that evidence in those factors properly. Is that the only condition that the district court gives away with respect to whether or not there are other licensees out there? So if I issue 10 licenses, that would be the weight that the district court would give. But I don't have to license XYZ if I'm the patentee and I can prove infringement. I don't have to give them a license, do I? Is that mandatory? No, but we're talking about equitable considerations of an injunction under the four-part test. And is there reputable injury? And are there monetary damages sufficient to cover that? And I think that's what the evidence of the licenses are in this case. What really drives this case, and I'm going to shift gears here, is that the district court erred in not weighing the factors of the public interest of health care. Here, there's no doubt. But that relates to the crooked nail, right? The what? The crooked nail. Well, it relates to something the health care interest called screw back out. Yeah, whether the accused product was bad. Yes, I think the evidence, without a doubt, it is bad. And that is why Stryker came around and even designed the product in the first place. It was over five years after Acumen had come out with their product on the market that Stryker came out because of problems with the Acumen product of screw back out. Screw back out is very serious. It happens not all the time, but more than enough to cause a problem where you must take the patient back into surgery, put them under anesthesia, and all the potential risks. Now, Stryker came along in 2001, five years after the Acumen bid on the market, and because of the request of doctors, built a better product. And that's what they did. And it took three years, millions of dollars, a lot of effort with German engineers and doctors, and they came out with a product that they believe, and I think the record shows, does solve the health care issue in this case. And the only product that solves it. And that's a paramount issue that should dictate this case. And why? Because one of the issues that Acumen has proved is that the public interests are not to serve. I think the district court said there's no objective evidence of screw back out with their product, but that's just a clearly erroneous finding. The whole case is about that. That's why we designed the products. Did we start reweighing the evidence? No, not at all. But I don't think it's fair to turn a blind eye to the evidence that the district court did when it said there was no objective evidence of screw back out problems. Because not only do we have five doctors that said there's a problem, and they believe that Stryker's product is in the best interest of health care for their patients, unrebutted, there were corroborative publications of screw back out. Their expert said there were screw back out problems. They, Acumen, in their brief on page 30 says screw back out was a problem we acknowledged at trial. So you can't turn a blind eye and say, okay, because Stryker, and this is what I believe the district court said, because Stryker brought the witnesses and the evidences, they just don't think it's objective. But it is objective because it's corroborated by the evidence, and it's what we're trying to basically salvage here. Yes, we were found infringed. Yes, the patent was not held invalid. Even though we attempted to perform a public interest of invalidating what we thought was a bad patent, we didn't settle. So, you know, what's the difference? One party settles, the other party tries to assert its rights. That's appropriate. But isn't that asserting the public interest of our own interest? Well, both. Both. It is our interest, yes. But it's also the public interest. And by the public interest of health care, we are now promoting the interest of the doctors, the patients. Yes, we benefit. No doubt about it. Stryker is collateral benefit from it. But that doesn't carry the day. What carries the day is this is the only product that solves the problem. We've got five unrebutted declarations, five doctors saying it's in the best interest of health care. Unrebutted. What if the district court didn't believe it? What? Should we go back to the credibility issue and figure it out for ourselves? So whether or not that evidence was unrebutted or otherwise? We don't have any witnesses in front of us. The district court did. The district court had, of the declarants, one before her head. That certainly could have been a credibility issue. There's four others that was not before the district court as far as evidence supporting the dissolving of the injunction in this case. No, you can't go back and reweigh evidence. But we're not at a true trial issue anymore. We're at a, after the trial, after the fact determination under the eBay factors whether the public interest is served or not or disserved by an injunction. And here, the only evidence that you can submit, or are submitted, are declarations. We have five unrebutted. They didn't submit one. From one physician saying that there's not a screwed back-up problem or that the Stryker product is not better. You know, it was their burden to show that the public interest is not deserved. They come up with nothing. So while it's not an issue of credibility, it is an issue of evidence, sufficient evidence to carry the date. Are the other manufacturers incorporating that in your improvement? Well, it is an improvement because, well, it is an improvement because the improvement that the Stryker had, based on three years of design, was the screws would back out if you didn't do something to keep them in. Well, are the other manufacturers not? They don't do it, no. Stryker is the only one that has a threaded hole with the key component, a locking ring. You know, bushing, a locking ring in which the screw goes in and it gets locked in there. And the other components are basically mimicking what Acumit does. And I think it is the burden to prove to Acumit to show that these other manufacturers don't have their problems. We don't have access to the information. But regardless of all the attempts of Acumit, and they may have had attempts. They tried to put a man cap on. They tried to do other things. And regardless of that and all these other people out there, it's still the evidence that there's only one. One and only one, this company, that solved the problem for sure. Now, Acumit says they've done it, but they haven't done it for all instances. And one's too many. The court finished its analysis by saying, in short, physicians who do not wish to use plant-based products can choose the non-infringing alternative. And you're saying, from a public health standpoint, that's no solution? It's absolutely not a solution. Because what happened here was the industry went to these new nail products, which Acumit was first. And again, we're fond of infringing. An injunction is not a penalty. But now that that product's accepted, a straight nail is not acceptable. Other things that were done before are not acceptable based on what we've now been able to establish through medical. And with these products, which is the way to go, there's still only one that doesn't have the problem of screwback. So when you combine the public interest here, which are, we believe, controlling, with the fact that there were two licenses to competitors of the same size as Stryker given, showing evidence, not conclusive, but certainly evidence of lack of reparable injury. And when you try to also balance the hardships, we believe the district court made an error. The district court said, well, Stryker can use one of the embodiments of a patent application and go to the market with it. Now, we all know an embodiment in a patent application does not equate to a commercial FDA product that physicians will accept. And the evidence shows that that embodiment is not acceptable. It does cause some additional problems. And Stryker, after all that effort, and we're now talking on behalf of the public, after all that effort to make a better product, to solve the screwback, they're not going to take two steps back and putting it straight now that it has other issues with it. So every time that there's a better product on the market, which infringes a patent, then there should be a licensing consideration given to that product because of the public interest. So we carve that out as an exception to the general rule? No, I don't think that's what we're saying at all. I think we're saying here, where the evidence shows that Stryker's product is better, we have five unabated declarations from medical opinions from doctors saying it's in the best interest of their patients to have this on the market. And then when you combine that, this is the key, when you combine it that the patent owner has already given up his exclusive rights to two similar sized competitors, you want to scratch your head and say, come on, what's the big deal here? Are they trying to do it for punishment? That's what we're saying here. Thank you. Thank you, Your Honor. My name is Chris Laney. I belong with the Court of Counsel to Paul Bakery representing Acumet. I'd like to address three points fairly quickly. First, I'd like to point out, as Judge Garza pointed out correctly, this is a very limited scope of review. It's not to rehash the arguments about what the facts are or whether or not how they should be weighed or the credibility. That's not this court's responsibility at this particular juncture. At this point, the question is simply whether or not the factual findings are clearly erroneous or if there's a clear error of law. I believe you already pointed that out. The premise Stryker is trying to suggest is that there was a factual finding that the Stryker nail or that the Acumet nail poses a health risk. Well, the district court made a factual finding that it doesn't. The court didn't really explain it. The court simply says the court concludes there is not sufficient objective evidence to find that public interest would be disturbed. And then it says, in short, in addition to denomination, we use plaintiff's product to choose a non-infringing element. Well, I mean, if one is really a defective product, that is much better. Even though it's infringing, it's not much of a choice to say choose a non-infringing element. Well, Your Honor, first, at this point, I need to make one correction that's in our brief on page 30. We cite to the court establishing a prime officiate case or stating that we established a prime officiate case that, in fact, there was no screwback outcome. That, in fact, our nail was effective. And we cited page appendix A199. That's incorrect. It's appendix A119. And the reason that's so important, if you go to page 119, it's clear that the district court struggled with this very issue. Because she was concerned about the public interest. And she heard all the evidence at trial. She read the declarations. And she weighed the credibility of it. And she came to the conclusion that there was no screwback outcome. Without much explanation? Well, without much explanation, but if you go to appendix A119, you'll see in the record at oral argument, she did spend more time explaining her rationale and her basis. In particular, she pointed out that Stryker never proved that, in fact, there was a screwback outcome problem. And to the extent there was, Acumen proved that it solved it. In particular, it provided the cap screw, which Stryker itself submitted to the FDA does minimize screwback outcome. She also considered those declarations, the five unrebutted declarations. And she said, those don't have much weight to me. In particular, you have three that are paid consultants whose job was to champion the Stryker and go out and sell it. And you had two that never state that they have personal experience of screwback out. They were told there was screwback out problems. So there was no evidence that, in fact, as corrected with the cap screw, there still remained a screwback out problem and, in fact, a health risk. The judge carefully considered that. Who got licensed in two bodies? Where is the irreparable harm in having the license? Well, the irreparable harm comes from the very fact that I believe you pointed out two problems. One, the Supreme Court has rejected the idea that simply because you give out licenses, categorically or generally presumes that there's no irreparable harm. Of course, if one made a public statement, this patent is available generally for licensing, then that sort of gives it away. But that's not this case. That's absolutely not this case. And I would even suggest in that context that there could be other facts that, for example, maybe it's only available in a particular field. Maybe they want to reserve another field for themselves. I mean, there are other factors that always come into play. But what's particularly important in this case and the procedure that this case is before this court is that the willful finding verdict has already been affirmed. And particular findings leading to that willful are important in this case. What the findings found is that Stryker recognized that Acumed, through its innovation, created a new market. So what did they try to do? They tried to purchase Acumed. Acumed says, no, I'm a startup company, I'm innovating, I'm energized, and I want to stay in this market. So what does Stryker do? It says, well, if I can't buy you, I'm going to take you. And what we proved at trial and to the jury and to the judge is that they deliberately targeted Stryker's customers. That's who they went after. I mean, they striked Acumed's customers. That's who they went after. They went directly after Acumed's customers. They went so far as to copy Acumed's product. And they even stole a chart out of the operating room to learn more about how Acumed's product is used and assembled. So we're talking about the actions of the largest orthopedic manufacturer in the world. The largest manufacturer in the world targets one of the smallest in the United States and says, I'm completely disregarding your patent rights and I'm going to take your customers and I'm going to eliminate you from the market. I think under any equitable decision and in looking at irreparable harm, a judge is well within his discretionary rights to say, no, you're not going to do that in this case. And what the facts also showed is that 60 percent of the sales Stryker had of its infringing product, Acumed would have made those sales. And so they're losing their customers. They're losing their market base. And there are intangibles that go along with that. Stryker likes to comment about the fact that the court relied on cases that have completely different facts. Well, that's not really an accurate representation of what the district court did. But the district court did is recognize those cases for the proposition that the law will under the law recognizes when you can establish a direct competitor has stolen your customers and your sale and your market share, that there are there are income. You can't calculate all the damage that associated with that. There's intangibles such as goodwill, such as lost opportunity. The ability to develop a relationship with a customer, the ability to get in front of them and tell them about the other innovations you've done so that you can make other sales. Well, we weren't very sympathetic to all of those in the old law. It was the law of the circuit. The Supreme Court made a significant adjustment, didn't they? Well, Your Honor, I slightly disagree with that. If you look at Justice Roberts, he actually says, at least to those two prompts, irreparable harm and the ability to cure with monetary damages. I believe there's still, when you establish a competitor, a direct competitor and lost sales, I still believe there's a presumption that you can't remedy that with monetary damages. What the Supreme Court did is it rejected both the district court and this court's general rule that you can somehow conflate all four of this into one simple standard, which is this court, I guess the general presumption was if it's a valid infringed patent, the presumption is an injunction will issue. The district court went the opposite way. The district court said, well, if you prove that they've licensed the product, then there's a presumption that no injunction will issue. And the Supreme Court did nothing more than simply say, no, there's no presumptions. There's no general rule that an injunction will or will not issue. The district court has to go through the four factors and exercise its discretion in the first instance. So it's not necessarily harder. You have to formally touch off basis. Correct. They have to exercise their discretion and look at each of the factors. They can't find two and say, I'm done. There's this presumption that it's going to happen. If there's no further questions. All right. Thank you. Respectfully ask that you affirm the district court. You're welcome. Thank you, Your Honor. On page 30 of Ackerman's brief, they state, at trial, Ackerman candidly admitted that there has been a screw back out issue with the Polaris. I mean, that's beyond dispute. But not before they fixed it with a cap. Well, the cap doesn't fix it. It only fixes one of the four screws. I'll give you an example. My four fingers I'm holding out of the four screws along the proximal end. The cap only touches the top. It can only keep the top from moving. It can't do anything with the next blow of three fingers I'm wiggling. Okay? So it doesn't solve the problem. And that's only one product has solved the problem. And that's the public interest that should control this case. Again, since eBay, the injunction is not an act of punishment. It's equitable. Stryker targeted the problem of screw back out. Yes, as part of its sites, it's accumulated because they caused it. But Stryker developed a product to solve screw back out. And they targeted the problem. And, in effect, it would target a competitor acumen. But it's not, you know, an over-exaggeration. You had five years of design around that particular patent. And you still did not. Because it was a jury. There was no design around that patent, was there? You're still infringing the patent. Even after all of the changes that you made. That's right, Your Honor. That's the finding that we have to live with. And that's behind us. But the improvement, which, as we know, is something different, is what makes this case and changes it now in the injunction phase. And that's what we're asking, the public interest that is paramount in this case. Based on the five declarations of underbody. And based on the evidence that now Stryker has something that the patients and the doctors really, really want. Really want. And it's a hardship. And it is an unfortunate side effect for them not to have access. Now, Stryker paid its penalty for infringing and willful infringing. But that's behind us. Thank you very much. Thank you.